19685. LOOPER *et al. v.* GEORGIA SOUTHERN & FLORIDA RAILWAY CO. *et al.*

ARGUED MAY 13, 1957—DECIDED JUNE 10, 1957.

*T. Arnold Jacobs, Gambrell, Harlan, Russell, Moye & Richardson, W. Glen Harlan, Chas. A. Moye, Jr., John W. Chambers,* for plaintiffs in error.

*David L. Mincey, Bloch, Hall, Groover & Hawkins, Harris, Russell, Weaver & Watkins, Schoene & Kramer, M. Kramer,* contra.

DUCKWORTH, Chief Justice. ■ The contract complained of was effective April 15, 1953. These petitioners were notified that unless they became members of the union within 60 days from the effective date of the contract their employment would be terminated. This notice accords with a clause in the contract. Thus is alleged and shown by the petitioners definite impending danger of losing their jobs unless this procedure which conforms to the alleged void contract is halted. While a mere apprehension will not authorize resort to equity (*Railway Emp. Dept. v. Hanson*, 351 U. S. 225, 76 Sup. Ct. 714, 100 L. ed. 1112; *Mayor &c. of Athens v. Co-Op Cab Co.*, 207 *Ga.* 505 (2), 62 S. E. 2d

906; *Nottingham* v. *Elliott*, 209 *Ga.* 481 (3), 74 S. E. 2d 93; *Armed Forces Service Co.* v. *Petree*, 211 *Ga.* 867 (1), 89 S. E. 2d 486), yet one is not required to await the infliction of the injury before seeking to prevent it by injunction. Indeed these petitioners would have appealed to equity too late if they had awaited the completion of the 60-days-notice period and the overt act of discharging them. Mount *v.* The Grand International Brotherhood of Locomotive Engineers, 226 Fed. 2d 604; *Sandt* v. *Mason*, 208 *Ga.* 541 (67 S. E. 2d 767).

While, as indicated above, this appeal to equity for injunctive relief is based upon facts and not mere apprehension and is therefore not premature, there is an additional reason why the judgment dismissing the amended petition can not be sustained upon the ground that it is premature, and that is the prayer that the contract be decreed illegal and void.

■ Section 2, Eleventh, of the Railway Labor Act (45 U. S. C. A. 481, § 152) plainly authorizes the embodiment of a "closed shop" clause in contracts of employment, and in sweeping terms, nullifies all State laws in conflict therewith. The Supreme Court upheld the constitutionality of such a contract under the act in Railway Emp. Dept. *v.* Hanson, 351 U. S. 225, supra. To uphold a closed shop contract the court necessarily approved a denial of one's right to work because he is not a member of a labor union. We do not see a possibility of reconciling that ruling which is based solely upon the status of the individual which is that of non-union and is entirely lawful, with the following chain of decisions of the same court holding that one could not be lawfully denied the right to work because of his status as indicated therein—because he was a Roman Catholic priest, Cummings *v.* State of Missouri, 71 U. S. 277, 4 Wall. 277, 18 L. ed. 356; a Chinese immigrant, Yick Wo *v.* Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. ed. 220; a teacher of German, Meyer *v.* Nebraska, 262 U .S. 390, 43 Sup. Ct. 625, 67 L. ed. 1042; a freight train conductor, Smith *v.* Texas, 233 U. S. 630, 34 Sup. Ct. 681, 58 L. ed. 1129; a State employee, Wieman *v.* Updegraff, 344 U. S. 183, 73 Sup. Ct. 215, 97 L. ed. 216; a negro, Steele *v.* Louisville & N. R. Co., 323 U. S. 192, 65 Sup. Ct. 226, 89 L. ed. 173; a teacher in a municipally supported school, Slochower *v.*

Bd. of Higher Ed. of New York City, 350 U. S. 551, 76 Sup. Ct. 637, 100 L. ed. 692. It strikes us as being a futile gesture to solemnly declare the sacred and indestructible constitutional right of one to freedom of speech and freedom of worship, and then sanction a denial of that same one's right to work which is the indispensable economic support without which neither freedom could endure. One could not for long enjoy speaking and worshiping freely if he was hungry and was denied bread or the means of obtaining it.

Anyone familiar with the experiences of the thirteen original colonies under the dictatorial powers of the King as expressed in the Declaration of Independence, the reluctance of the States to surrender or delegate any powers to a general government as evidenced by the Articles of Confederation, and the demonstrated need for more powers in the area where jurisdiction was given the general government, will have no difficulty in clearly understanding the meaning of the Constitution when it defines those powers and by the Ninth and Tenth Amendments removes all doubt but that powers not expressly conferred were retained by the States. Even the school children in these original States know that solely because of the erection by individual States of trade barriers inimical to other States, and the inability to remove this evil by State action, the commerce clause, art. 1, sec. 8, par. 3 (Code § 1-125), invested the general government with exclusive jurisdiction of interstate commerce to insure the free flow of commerce across State lines. But claiming authority under this clause the Congress, with the sanction of the Supreme Court, has projected the jurisdiction of the general government into every precinct of the States and assumed Federal jurisdiction over countless matters, including the right to work, which are remotely, if at all, related to interstate commerce. By this unilateral determination of its own powers the general government has at the same time and in the same manner deprived its creators, the States, of powers they thought and now believe they retained. But State courts, irrespective of contrary opinions held by their own judges who by law are required to have had experience as practicing attorneys before they can become judges of the law, must obey and accept the decisions of the

Supreme Court of the United States pertaining to interstate commerce. We believe that a single person armed with right, *the right to work,* should in all courts of justice be able to defeat the selfish demands of multitudes though they be members of a labor union who seek to deprive him of that right. We would so rule in any case where we are allowed jurisdiction. When the. Supreme Court has, as seen above, held the closed shop labor contract act valid we must likewise hold, not upon our own judgment, but solely because we are required to follow the Supreme Court ruling. We have made these observations to indicate our deep distress over the utter helplessness of a free American under this law, and our inability to judge his cause according to our understanding of the Constitution.

We go now to the single point raised which the Supreme Court has, we believe, clearly indicated is still open for decision. The petition of these non-union employees alleges that they have been notified in accordance with the law and the contract of employment that unless they become members of a union within 60 days their employment will be terminated. It is alleged that the union dues and other payments they will be required to make to the union will be used to "support ideological and political doctrines and candidates" which they are unwilling to support and in which they do not believe, and that this will violate the First, Fifth and Ninth Amendments of the Constitution. While Railway Emp. Dept. *v.* Hanson, 351 U. S. 225, supra, upheld the validity of a closed shop contract executed under § 2, Eleventh, that opinion clearly indicates that that court would not approve a requirement that one join the union if his contributions thereto were used as this petition alleges. It is there said (headnote 3c) : "Judgment is *reserved* [italics ours] as to the validity or enforceability of a union or closed shop agreement if other conditions of union membership are imposed or if the exaction of dues, initiation fees or assessments is used as a cover for forcing ideological conformity or other action in contravention of the First or the Fifth Amendment." We must render judgment now upon this precise question. We do not believe one can constitutionally be compelled to contribute money to support ideas, politics and candidates which he opposes. We believe his right to immunity

from such exactions is superior to any claim the union can make upon him.

Accordingly, the trial court erred in dismissing the amended petition which alleges that such uses will be made of dues and other money which as members of the union petitioners would be required to contribute to the union.

*Judgment reversed. All the Justices concur.*