Kenneth L. HOSTETLER et al.

v.

BROTHERHOOD OF RAILROAD TRAINMEN, an unincorporated association, and General Grievance Committee, Brotherhood of Railroad Trainmen, Baltimore & Ohio System, Defendants and Third-Party Plaintiffs,

v.

BALTIMORE AND OHIO RAILROAD COMPANY, a body corporate, Third-Party Defendant.

James F. DECKER et al.

v.

BROTHERHOOD OF RAILROAD TRAINMEN, an unincorporated association, and General Grievance Committee, Brotherhood of Railroad Trainmen, Baltimore & Ohio System.

Civ. Nos. 9795 and 10136.

United States District Court
D. Maryland.
April 27, 1960.

Herbert M. Brune, Baltimore, Md., and Meyer Fix, Rochester, N. Y., for plaintiffs.

Bernard M. Savage and Irving Schwartzman, Baltimore, Md., and Wayland K. Sullivan, Cleveland, Ohio, for defendants. S. R. Prince, Baltimore, Md., for B. & O. R. Co.

THOMSEN, Chief Judge.

Plaintiffs in this consolidated case are trainmen, former employees of the Baltimore and Ohio Railroad Company (B&O), who deliberately abandoned their membership in defendant Brotherhood of Railroad Trainmen (BRT), stopped paying dues to that union, joined a rival union, Union of Railroad Operating Crafts (UROC), which is not "national in scope" as that term is used in 45 U.S. C.A. § 152, Eleventh (c), were cited to B&O by BRT for violation of the Union Shop Agreement, and were subsequently discharged by B&O. The Hostetler suit was filed on July 12, 1957, against BRT and its General Grievance Committee, referred to collectively herein as BRT; the Decker suit was filed on November 8, 1957, against BRT and B&O, but in May 1959, the Decker plaintiffs dismissed with prejudice their action against B&O.

Plaintiffs seek damages from BRT for procuring their discharge. They contend: I. That BRT discriminated against them in expelling them from the union and in citing them to B&O for violation of the Union Shop Agreement. II. That the Union Shop Agreement be-

tween BRT and B&O was rendered illegal because after January 1, 1956, BRT used some dues money for political purposes; hence the Agreement could not justify BRT's continued insistence that plaintiffs be discharged for non-payment of dues, despite the fact that such non-payment and the expulsion and citation of plaintiffs therefor occurred between December 1951 and January 1954, before any dues money was used for political purposes.

I. Defendants deny any discrimination. II. They deny any improper use of dues; and deny that any such use, if it existed, would have rendered the Union Shop Agreement illegal, would have required BRT to withdraw its charges against plaintiffs, or would give plaintiffs any right to recover damages from BRT in this case. Defendants also rely on the following defenses: I(A). The exclusive jurisdiction of the National Railway Adjustment Board (NRAB). II(A). Lack of jurisdiction in this court over the second cause of action. III(A). Res adjudicata as to some or all plaintiffs by reason of (1) a previous case in this court, (2) the decisions of the NRAB in those cases submitted to it by B&O, and (3) the decisions of B&O's appeal-hearing officer. III(B). Limitations, laches and estoppel.

Defendants have moved for summary judgment. I find that there is no genuine issue about the facts material to the decision of that motion; where there is any genuine dispute about any facts, they have been stated most favorably to plaintiffs.

On October 1, 1951, the Union Shop Agreement between B&O and BRT, as collective bargaining agent for certain employees of B&O, became effective. The Agreement was authorized by the Railway Labor Act, as amended in 1951, 64 Stat. 1238, 45 U.S.C.A. § 152, Eleventh (a) and (c).

Plaintiffs were already members of BRT or became members shortly thereafter. While maintenance of union membership was made "a condition of continued employment", the statute as amended also provided that this condition would be satisfied "if said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services". 45 U.S.C.A. § 152, Eleventh (c).

On various dates between December 1951 and June 1953 plaintiffs withdrew from BRT and joined UROC. They stopped paying dues to BRT and were expelled from the union for that reason. Plaintiffs joined UROC, believing that it was "national in scope", and that membership in UROC satisfied the condition specified in the statute. However, on February 25, 1957, the Supreme Court decided that UROC was not "national in scope" and was not "organized in accordance with" the statute. Pennsylvania R. Co. v. Rychlik, 352 U.S. 480, 77 S.Ct. 421, 1 L.Ed.2d 480.

BRT had always contended that membership in UROC was not a sufficient maintenance of union status to satisfy the statutory requirement and to protect plaintiffs' employment by B&O. Accordingly, on various dates in 1952 to 1954, after plaintiffs had been expelled from BRT for non-payment of dues, BRT cited plaintiffs to B&O for failure to maintain union membership as required by the Union Shop Agreement. The usual notices were sent, hearings were demanded by each of the plaintiffs, and those hearings were held. In each case it was proved that the employee had voluntarily withdrawn from BRT, that he had ceased paying his dues, and that he had joined UROC. The hearings resulted in decisions adverse to plaintiffs, and all of them appealed. Appeal hearings, as provided for by the Agreement, were held in 1955, but the B&O appeals hearing officer delayed his decision until after the Supreme Court decided Rychlik. Thereupon, appeal decisions adverse to plaintiffs were rendered, and, since BRT continued to press for their discharge,

B&O discharged plaintiffs in April, May and June, 1957.

The reason for the discharge in each case was that the employee had stopped paying dues to and had ceased to be a member of BRT. The only issue raised by plaintiffs in the administrative proceedings was that membership in and payment of dues to UROC was a sufficient union membership to protect their employment by the railroad. The question of discrimination by BRT in expelling and citing plaintiffs was not raised, nor was any question with respect to the use of dues.

B&O submitted to NRAB the cases of all the employees who are now plaintiffs in the Decker case, and NRAB sustained the action of the B&O. Only one of the employees (Archie Lewis) appeared or filed any papers with NRAB, although all received due notice of the proceedings. B&O also submitted to NRAB the cases of some of the Hostetler plaintiffs, but withdrew those cases when all of the plaintiffs in the Hostetler case executed covenants not to sue B&O in consideration of $100 apiece paid by B&O, the agreement of B&O to reinstate the men in their jobs with seniority if BRT would consent, and the agreement of B&O to withdraw the cases of the Hostetler plaintiffs already submitted to NRAB and not to submit the cases of the other Hostetler plaintiffs.

## I.

### Discrimination in Expulsion from BRT and Citation to B&O

*A. Jurisdiction over Claims for Damages for Discrimination*

■ This court has jurisdiction to consider plaintiffs' claims for damages against BRT based upon the alleged discrimination of the union in expelling them and citing them to B&O. Cunningham v. Erie R. Co., 2 Cir., 266 F.2d 411, 414; Latham v. Baltimore & O. R. Co., 2 Cir., 274 F.2d 507; Steele v. Louisville & Nashville R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80;

McNamar v. Baltimore & O. C. Term. R. Co., 7 Cir., 254 F.2d 717; Shiels v. Baltimore & O. R. Co., 7 Cir., 254 F.2d 863, affirming D.C.S.D.Ind., 154 F.Supp. 917, certiorari denied 358 U.S. 846, 79 S.Ct. 71, 3 L.Ed.2d 80, rehearing denied 358 U.S. 896, 79 S.Ct. 155, 3 L.Ed.2d 123.

■■ It is not necessary for a plaintiff to exhaust his remedies under the Railway Labor Act before maintaining such an action as this. The NRAB has jurisdiction over disputes between a railroad and one or more of its employees; it does not have jurisdiction over disputes between a union and its members. Even where the dispute is between a railroad and an employee, the employee is not required to exhaust his remedies under the Act before suing the railroad for wrongful discharge. Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089.

The dictum in Alabaugh v. Baltimore & O. R. Co., 4 Cir., 222 F.2d 861, 867, discussed in Cunningham, 266 F.2d at page 415 and in Latham, 274 F.2d at page 512, does not forbid the prosecution of this action. Alabaugh was not an action for damages, but for an injunction to prevent discharge. In Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, quoted at length by Judge Parker in Alabaugh, the Supreme Court said: "Our holding here is not inconsistent with our holding in Moore * * * A common-law or statutory action for wrongful discharge differs from any remedy which the Board (NRAB) has power to provide, and does not involve questions of future relations between the railroad and its employees. If a court in handling such a case must consider some provision of a collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the Board." 339 U.S. at page 244, 70 S.Ct. at page 580.

BRT further argues that Rule 7(d) of "Rules and Rates of Pay for Trainmen", which was made part of the Union Shop Agreement, affords the only remedy to

which plaintiffs would be entitled. Rule 7(d) provides: " * * * If it is found the employee has been unjustly suspended or dismissed from the service, such employee shall be reinstated with his seniority rights unimpaired and compensated for the wage loss, if any, resulting from said suspension or dismissal."

▇ Whatever protection this rule may afford the railroad (cf. Shiels, supra, 154 F.Supp. at page 926, with Transcontinental & Western Air, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325, and Jorgensen v. Pennsylvania R. Co., 25 N.J. 541, 138 A.2d 24), it affords no protection to the union against the alleged discrimination. See also Jenkins v. Schluderberg-Kurdle Co., 217 Md. 556, 144 A.2d 88.

### B. Merits

Sec. 118 of the BRT Constitution requires that dues be paid monthly in advance of the first day of each month. The Treasurer of the local lodge is required to transmit to the General Secretary of BRT on the tenth day of each month a list of dues-paying members, showing whether or not their dues are paid. If the dues of any member are not paid by the tenth of the month, it is the practice to enter "expelled for non-payment of dues" opposite the name of such member, unless he has applied for relief under sec. 121 of the BRT Constitution. If through inadvertence dues are not paid on time, it is the custom of the local to accept a reasonably prompt tender of the dues and to reinstate the member.

It was not the custom of BRT to cite promptly to B&O every man who was expelled for non-payment of dues, but such citation was customarily postponed until the local officers were satisfied that the dues would not be paid. If dues were not paid because of illness, a man was ordinarily not cited unless, after returning to work, he refused or continued to fail to pay.

Plaintiffs were cited to B&O anywhere from a few days to a year or more after the date on which they were ex-

pelled for failure to pay dues. Few of the plaintiffs were cited until after they had joined UROC, and those who were known to have joined UROC were cited more promptly than those who were not known to have joined UROC. The difference in the grace period allowed the several plaintiffs before citation resulted from the fact that the chairman of the local lodge deferred for a few months citation of men whom he thought were on the "fence" and could be persuaded to return to BRT and pay up their dues.

Plaintiffs concede that each of them deliberately ceased to pay dues to BRT and joined UROC. The original complaints in these cases allege that each of the plaintiffs had become dissatisfied with the management and administration of BRT.

Plaintiffs contend that the foregoing facts show discrimination on the part of BRT in citing plaintiffs to B&O, and that such discrimination was hostile and malicious. There is evidence of considerable bitterness and hard feelings on the part of the local leaders of BRT against the men who had left BRT to become active in UROC. The question is whether the facts show such discrimination as is inconsistent with BRT's duties under the statute and the Union Shop Agreement. "The arbitrariness shown must be of the bad faith kind." Cunningham v. Erie R. Co., 2 Cir., 266 F.2d 411, 417. In that case the court also said: "Moreover it would seem that the 'uniform requirement of dues' does not mean that the right to require the discharge of delinquent members is waived or precluded unless it is exercised as soon as the union member falls in arrears, even for a day. The natural inference is that the union is empowered to enforce its dues requirements with common sense, making allowances and concessions where need be." 266 F.2d at page 417.

In the instant case, as in Alabaugh v. Baltimore & O. R. Co., 4 Cir., 222 F.2d 861, affirming D.C.Md., 125 F.Supp. 401, certiorari denied 350 U.S. 839, 76 S.Ct. 77, 100 L.Ed. 748, plaintiffs voluntarily

"stopped paying dues to Brotherhood and terminated their membership therein, in order to join and be active in a rival union. Plaintiffs gambled heavily for a stake which must have seemed worth the risk at that time. By terminating their membership in Brotherhood and ceasing to pay dues to it, they made themselves subject to discharge by B&O under the terms of the union shop agreement, unless they could show that UROC was a labor organization which qualified under section 152 Eleventh (c). They could have hedged their bet by continuing to pay dues to Brotherhood after joining UROC, pending determination of UROC's status. If they had continued to pay dues to Brotherhood, that union might have expelled them for dual unionism, but B&O could not have discharged them, in view of the provisions of section 152 Eleventh (c). They would have continued in their employment as 'free riders'. But they chose to stake all on UROC. Having lost, they sought reinstatement in Brotherhood." 125 F.Supp. at page 407.

Plaintiffs do not press in this court any discrimination by BRT in refusing to reinstate plaintiffs. A number of cases have held that there was no obligation to reinstate plaintiffs in similar situations. Alabaugh v. Baltimore & O. R. Co., supra; Sampsell v. Baltimore & O. R. Co., 4 Cir., 235 F.2d 569, certiorari denied 352 U.S. 941, 77 S.Ct. 261, 1 L.Ed. 2d 237; McNamar v. Baltimore & O. Chic. Term. R. Co., 7 Cir., 254 F.2d 717; Shiels v. Baltimore & O. R. Co., 7 Cir., 254 F.2d 863, certiorari denied 358 U.S. 846, 79 S.Ct. 71, 3 L.Ed.2d 80, rehearing denied 358 U.S. 896, 79 S.Ct. 155, 3 L.Ed. 2d 123; Latham v. Baltimore & O. R. Co., 2 Cir., 274 F.2d 507. The Second Circuit in Latham quoted with approval from McNamar and Shiels as follows: "Once it becomes apparent that the plaintiff initially, voluntarily and deliberately breached the Union Shop Agreement, the motives which prompted the defendants to act within their contractual and statutory rights are immaterial." 274 F.2d at page 511.

Plaintiffs contend, however, that this rule does not apply to the original expulsion and citation of plaintiffs by BRT, because BRT still occupied a fiduciary relationship with plaintiffs at that time. However, plaintiffs have not shown that their expulsion from the union was different from that of other persons who were delinquent in paying dues and who did not apply to the lodge for an extension. There was no discrimination, hostile or otherwise, in their expulsion. In cases where there has been no voluntary and deliberate termination of membership in a union, it may be argued that the fiduciary duty of the union continues for a reasonable period after non-payment and expulsion. BRT recognized that continuing duty in cases of sickness and in the case of those members, including some of the plaintiffs in this case, whose failure to pay was not deliberate. But when a union is satisfied that a member has deliberately terminated his membership in the union, it owes him no duty to refrain from citing him promptly.

The necessity for an effective union sanction to discourage "free riders" has been recognized by the courts. See Cunningham v. Erie R. Co., 2 Cir., 266 F.2d 411, 413. Cunningham was a most unusual case, in which the plaintiff claimed that the union had violated its duty to him before he stopped paying dues. The Second Circuit found that there was a triable issue whether Cunningham's union membership had or had not been terminated for "reasons 'other than the failure of the employee to tender the periodic dues'". However, in Latham, which was a case very much like ours, the Second Circuit said: "We are at a loss to perceive how this ruling in Cunningham helps appellants. There could not possibly have been any discrimination connected with their voluntary act of resigning from the Brotherhoods in order to join UROC." 274 F.2d at page 510. This statement is in accord with the views expressed in Alabaugh and Sampsell.

## II.

### Use of Dues for Political Purposes

Plaintiffs' argument on this point runs as follows: To interfere with a person's employment without justification is a tort. Lucke v. Clothing Cutters & Trimmers' Assembly No. 7507, K of L, 77 Md. 396, 26 A. 505, 19 L.R.A. 408; International Union of United Automobile, Aircraft & Agricultural Implement Workers of America v. Russell, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030. BRT relies on the Union Shop Agreement as its justification for citing plaintiffs for nonpayment of dues; the Agreement is invalid and unenforceable because some parts of the dues have been spent for political purposes, in violation of the Corrupt Practices Act, 18 U.S.C.A. § 610; therefore, BRT's use of the agreement as justification for its conduct must fail.

### A. Merits and Remedy

The documents and affidavits which are before the court show that BRT was affiliated with the Railway Labor Executive Association (RLEA) from 1928 to 1937 and reaffiliated with RLEA on January 1, 1956. BRT was never affiliated with the Railway Labor Political League (RLPL), but plaintiffs allege, and defendants deny, that during 1956 and 1957 general funds of BRT and other members of RLEA were channeled through RLEA to RLPL and used by RLPL for political purposes in violation of the Corrupt Practices Act, 18 U.S. C.A. § 610. Contributions to the Trainmen's Political Education League (TPEL) were made by individual members of BRT; dues were not used for that purpose, although plaintiffs allege that as far back as 1944 BRT expended substantial funds to influence the general public to vote for or against particular candidates for national office. The material supplied by plaintiffs in support of their allegations do not show that any dues were spent for such purposes during the years 1951 to 1955.

Plaintiffs were all expelled from BRT for failure to pay dues before July 1953

and were cited to B&O on or before January 12, 1954. No dues were used for an improper purpose while plaintiffs were members of BRT. BRT continued to press for plaintiffs' discharge by B&O during 1956 and 1957, but only because of plaintiffs' failure to pay dues at various times during 1952 and 1953.

It is not settled what effect the alleged improper use of dues money would have on the Union Shop Agreement. Cf. Allen v. Southern R. Co., 249 N.C. 491, 107 S.E.2d 125, with Looper v. Georgia Southern & Florida R. Co., 213 Ga. 279, 99 S.E.2d 101, and the later opinion in the same case, International Association of Machinists v. Street, 215 Ga. 27, 108 S.E.2d 796. The question was left open in Railway Employees' Department, A. F. of L., v. Hanson, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112, but an appeal of the Street decision is now pending in the Supreme Court. Prob. juris. noted, 361 U.S. 807, 80 S.Ct. 84, 4 L.Ed.2d 54.

Granting that the use of dues money in violation of the Corrupt Practices Act is unlawful, it does not follow that such use renders a union shop agreement illegal, or subjects the union or the railroad to liability for any and all action taken in reliance on the agreement. The remedy should be prospective, not retroactive. An injunction against wrongful use of the money or against collection of dues or future invocation of the agreement until the abuses are stopped would seem to be the appropriate remedy, rather than refusing to allow the union to set up the agreement in defense of an action for damages, certainly where, as here, the breach of the agreement occurred before the alleged misuse of the dues.

### B. Jurisdiction

In any event, this court does not have jurisdiction over such a claim as plaintiffs assert in their Second Cause of Action.

They concede that this court would ordinarily have no jurisdiction over an action for interference with an employment relationship in the absence of di-

versity of citizenship, which is not alleged in this case. But plaintiffs contend that the use by defendants of an allegedly invalid Union Shop Agreement to justify their action in citing plaintiffs to B&O makes this a case which arises under the Constitution or laws of the United States.

■■ The jurisdiction of a federal court depends upon " * * * plaintiff's statement of his own claim in the bill or declaration unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose." Taylor v. Anderson, 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218; Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194; Rose's Federal Jurisdiction and Procedure, 4th ed., secs. 228, 229; Jackson v. Martin Company, D.C.Md., 180 F.Supp. 475. The claim alleged in the Second Cause of Action is an ordinary tort, Lucke, supra, Russell, supra, which does not arise under the Constitution or laws of the United States. The matters alleged in avoidance of defendants' anticipated use of the Union Shop Agreement as justification for its action do not give this court jurisdiction of the Second Cause of Action.

### III.

#### A. Res Adjudicata

■ 1. BRT claims that the decision in Sampsell v. Baltimore & O. R. Co., 4 Cir., 235 F.2d 569, certiorari denied 352 U.S. 941, 77 S.Ct. 261, 1 L.Ed. 2d 237, is res adjudicata of the issues in this case. Sampsell was a class action for an injunction against BRT and B&O to prevent discharge by B&O of the plaintiffs therein, to which all but five of the plaintiffs in the instant cases were parties. It was dismissed for want of jurisdiction over the subject matter and is not res adjudicata of plaintiffs' claims for damages in this case. 30A Am.Jur.

(Judgments, sec. 353) p. 394. The points raised in the instant case were not raised in Sampsell, although the claim in the instant case based upon discrimination in the expulsion and citation by BRT is very similar to the claim of discrimination in refusal to readmit, which was raised in Sampsell. So far as the instant case is based upon the alleged improper use of dues after January 1, 1956, it was not and could not have been raised in Sampsell, which was decided by the District Court in April 1956.

■ 2. After the Decker plaintiffs were discharged, B&O submitted the disputes with those plaintiffs to NRAB, which notified them of the filings and requested them to file answering submissions. Only one (Archie Lewis) did so. NRAB held that it had jurisdiction and that B&O was justified in the discharges.[1] BRT now argues that the NRAB decisions bar the claims of the Decker plaintiffs against BRT, citing 45 U.S.C.A. § 153 First (m). The questions at issue between plaintiffs and BRT in the instant case were not submitted to NRAB, and it would have had no jurisdiction to consider them. The unilateral submission of the cases to NRAB by B&O does not deprive plaintiffs of any right they may have to sue BRT for damages.

3. A fortiori, the appeals-hearing officer of B&O had no jurisdiction to determine the questions involved in the instant case.

#### B. Limitations, Laches & Estoppel

Since for the reasons stated above, judgment must be entered for the defendants on both causes of action, it is not necessary to decide the troublesome questions of limitations involved: (1) Whether sec. 1 (three years) or sec. 3 (twelve years) of Art. 57 of the Ann. Code of Md., 1957 ed., applies to the first cause of action; see discussion of Maryland cases in Roland Electrical Co. v. Black, 4 Cir., 163 F.2d 417, 6 A.L.R.2d

---

[1]. The B&O also submitted to NRAB the disputes with some of the Hostetler plaintiffs but withdrew those cases after it settled with the Hostetler plaintiffs.

**290**

82; and (2) When each cause of action arose; see Hahn v. Claybrook, 130 Md. 179, 100 A. 83, L.R.A.1917C, 1169; Vincent v. Palmer, 179 Md. 365, 19 A.2d 183; Callahan v. Clemens, 184 Md. 520, 41 A.2d 473; Local Lodge No. 1424, etc. v. N. L. R. B., 80 S.Ct. 822.

▇ Since these claims are legal in nature, the equitable defense of laches does not apply, although estoppel in pais might be a defense if the facts supported the claimed estoppel; but they do not.

## IV.

Plaintiffs' Motion for Leave to Amend

At the close of the final argument, with the current running against them, counsel for plaintiffs asked leave to amend the complaint once more, this time seeking an alternative remedy, namely, equitable relief requiring BRT to consent to the reinstatement of plaintiffs with their old seniority.

▇ This court would be without jurisdiction to grant the relief prayed, which falls within the exclusive jurisdiction of the NRAB. Alabaugh, supra; Sampsell, supra; Wagner v. International Brotherhood of Electricians, 395 Pa. 380, 150 A.2d 530. See also Slocum, supra.

▇ Since most of the plaintiffs in the instant case were plaintiffs in Sampsell, that case would be res adjudicata against them on the question of jurisdiction. Although the discrimination alleged in Sampsell was discrimination in refusing to readmit to membership in BRT rather than discrimination in citing to B&O, the difference is immaterial on the question of jurisdiction.

▇ The plaintiffs in the Decker case are also barred from seeking reinstatement in this court by the NRAB decisions in their cases. Such decisions are binding on all parties so far as the question of reinstatement is concerned.

45 U.S.C.A. § 153 First (m). See Brotherhood of R. R. Trainmen v. C. R. & I. Ry., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622.[2]

▇ Moreover, the relief sought by the proposed amendment is barred by laches and estoppel. The plaintiffs were cited in 1952 and 1953, were held to be in violation of the Union Shop Agreement by the B&O hearing officer in 1954 and 1955, were again held by the B&O appeals hearing officer, in early 1957, after the decisions in Alabaugh and Sampsell, to have been in violation of the Union Shop Agreement at the time of their initial hearings, and were thereafter discharged from their employment with the B&O in April, May and June of 1957. In March 1960, they pray, for the first time, restoration to their employment with seniority. No such claim was made in the complaints filed in Hostetler on July 12, 1957, and in Decker on November 8, 1957, nor in the Hostetler Amendment to Complaints filed on July 31, 1958, nor in the Decker Amendment to Complaint and Second Amended Complaint filed on June 15, 1959. Plaintiffs at any time after their discharge had the right to be hired as new employees and be placed at the bottom of the seniority roster.

If added to the seniority roster at any place other than at the end, they would displace employees who have always paid their dues. Granting the relief prayed would restore seniority and employment to those who, for reasons of their own, gambled on a rival union and lost, and would result in loss of employment by loyal dues-paying members. It would be inequitable to grant the relief prayed.

If plaintiffs were held entitled to this remedy at this time because of the alleged use of dues moneys for political purposes, other men discharged by B&O and other railroads for nonpayment of

**2.** The decisions of the B&O officers in the appeal hearings of the Hostetler plaintiffs were not appealed to the NRAB, but in view of my rulings on other points it is not necessary to decide whether such failure prevents plaintiffs from seeking reinstatement in this court. See sec. 5 (c) of the Union Shop Agreement.

union dues would be entitled to the same remedy; this would create very serious seniority problems, and would produce the very conditions the Railway Labor Act was intended to prevent.

It would be both futile and inequitable to grant the motion to amend.

The motion to amend the complaint is hereby denied.

Defendants' motions for summary judgment are hereby granted. The Clerk is directed to enter judgment for the defendants with costs.