287 F.2d 457
 Kenneth L. HOSTETLER, Earl Albertson, Junior A. Avers,
Wallace L. Avers, Hubert Ball, Joseph B. Blacker,
Marvin D. Clem, et al., Appellants,
v.
BROTHERHOOD OF RAILROAD TRAINMEN, an unincorporated
association, and General Grievance Committee,
Brotherhood of Railroad Trainmen,
Baltimore & Ohio System, Appellees.
 No. 8185.
 United States Court of Appeals Fourth Circuit.
 Argued Nov. 8, 1960.
Decided Feb. 23, 1961.
 
 Herbert M. Brune, Baltimore, Md., (Meyer Fix, Rochester, N.Y., on brief), for appellants.
 Bernard M. Savage, Baltimore, Md. (Wayland K. Sullivan, Cleveland, Ohio, on brief), for appellees.
 Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and BRYAN, district judge.
 PER CURIAM.
 
 
 1
 For many years the appellants had been employees of the Baltimore and Ohio Railroad Company and members of the Brotherhood of Railroad Trainmen (BRT). In September, 1951, the B. & O. and BRT entered into a union shop agreement, pursuant to the Railway Labor Act,[1] requiring employees in the crafts represented by BRT to become, as a condition of continued employment, members of that or of another union national in scope and organized in accordance with the Act. At various times in the fall of 1952 these appellants stopped paying dues to the Brotherhood and joined a newly formed labor organization, known as the Union of Railroad Operating Crafts (UROC). This union was later held by the Supreme Court not to be 'national in scope' and not 'organized in accordance with the Act,' as it had never qualified under Section 3, First of the statute.[2] Pennsylvania R. Co. v. Rychlik, 1957, 352 U.S. 480, 77 S.Ct. 421, 422, 1 L.Ed.2d 480. Thus, the Supreme Court decided that membership in UROC was not compliance with the maintenance of union membership provision of the union shop agreement. Of course, this infirmity in the status of UROC in 1952. They appellants when they withdrew from BRT and joined UROC in 1952. They believed that UROC membership was compliance with the union contract, and it was not finally determined until five years later that this belief was erroneous.
 
 
 2
 Shortly after they joined UROC and stopped paying dues to BRT, the appellants were cited to the Railroad by the Brotherhood for violation of the union shop agreement. They received initial hearings before a B. & O. hearing officer and later appeal hearings before another railroad hearing officer. After adverse decisions in these proceedings, they were finally discharged by the B. & O. in 1957.
 
 
 3
 The present action was then commenced in the District Court by the appellants against the Brotherhood to recover damages resulting from their discharge. The Railroad, although initially brought into the case by BRT, is no longer a party, as it has agreed to reinstate the appellants if the Brotherhood will withdraw its objections. The complaints alleged that the appellants were victims of various discriminatory practices by BRT in that (1) the Brotherhood hood cited them to the B. & O. for discharge while not citing others who were delinquent in dues payments, (2) that the Brotherhood hastily cited them while delaying considerably before citing others, and (2) that BRT discriminated against them in refusing to reinstate them with full seniority.
 
 
 4
 The complaints also alleged that the defendant union and been unlawfully using dues for political purposes and, because of this, must be forbidden to invoke the union shop provisions against the plaintiffs.
 
 
 5
 After testimony had been taken, the appellants filed a motion to amend their complaints, and attached the proposed amendment, seeking an order compelling BRT to withdraw its objections to their reinstatement with full seniority as employees of the Railroad. The District Court, after the plaintiffs had presented whatever evidence they desired relative to these allegations, granted the defendant's motions for summary judgment and denied the plaintiffs' motion for leave to amend their complaints asking for reinstatement. The District Judge wrote an extended opinion, discussing the facts of the case in more detail, which is reported at 183 F.Supp. 281.
 
 
 6
 It is well established that, under both the Railway Labor Act and the National Labor Relations Act, 29 U.S.C.A. 151 et seq., a bargaining agent must fairly and without discrimination represent all employees in the bargaining unit, and that employees discriminatorily treated have recourse to the federal courts. Steele v. Louisville & N.R. Co., 1944, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood, 1944, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187; Ford Motor Co. v. Huffman, 1953, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048; Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. On this appeal, the appellants do not press, as they apparently did not in arguments before the District Court,[3] the issue of discrimination in reinstatement as BRT members, but they rely upon discrimination allegedly practiced in the citation of some dues defaulters while excusing others, and in the speedier citation of some than of others.
 
 
 7
 First, we do not think it unlawful, under the doctrine of the above cases, for the Brotherhood to cite some employees to the Railroad for failure to maintain membership in a qualified union more promptly after their default than it cites others. BRT's reason for this was that, as to some, it had greater hopes of persuading them to rejoin. This would seem to furnish a reasonable basis for distinctions in treatment and not to constitute the arbitrary discrimination forbidden by the law.
 
 
 8
 Assuming that the discrimination in both citation and reinstatement alleged in the pleadings would constitute a cause of action, we have carefully reviewed the record and find that, when given the opportunity by the District Court, the appellants were unable to present any significant evidence of discriminatory treatment.[4] In view of the fact that the appellants, when afforded the opportunity, could offer no substantial evidence of unlawful discrimination, a further trial on the issue would be unwarranted. Upon the showing made, the District Court was not in error in resolving this point against the plaintiffs.
 
 
 9
 With the issue of discrimination eliminated, we are brought to the appellants' contention that the union shop agreement could not properly be used against them to effectuate their discharge in 1957 because of BRT's alleged use of union dues for political purposes. For that contention to prevail, it would be necessary to hold that such use of dues automatically terminates the Brotherhood's right under the Railway Labor Act to enter into or maintain a union shop agreement.[5] If it be assumed that, the use of dues for political purposes by a union having a union shop agreement, either infringes the constitutional rights of objecting members or violates the Corrupt Practices Act,[6] the invalidation of the union shop agreement does not necessarily follow. There could be less drastic relief than an adjudication of unconstitutionality of the Railway Labor Act as applied here. Milder, and sufficiently effective, form or relief would be to enjoin such misuse of dues. Since we think a remedy other than voiding the union shop would be more appropriate, the plaintiffs could not have the relief they ask in this case even if they established that dues were used for political contributions.
 
 
 10
 Finally, the District Court did not err in denying leave to file the amendment to the complaint which sought to compel BRT to allow them reinstatement in their employment with full seniority. In the absence of discriminatory treatment by the Union, Pennsylvania R. Co. v. Rychlik, 1952,352 U.S. 480, 77 S.Ct. 421, 1 L.Ed.2d 480, appears to preclude such relief. The present plaintiffs prayed for an order requiring BRT 'specifically to withdraw its objections to the reinstatement of plaintiffs in their employment with the Baltimore and Ohio Railroad Company.' This is precisely the relief the plaintiff sought in the Rychlik case: 'Rychlik, on behalf of himself and other employees of the Railroad similarly situated, thereupon brought this class suit in the United States District Court for the Western District of New York, seeking an injunction compelling petitioners to accept him as a member of the Brotherhood and an employee of the Railroad.' 352 U.S. at page Court denied his plea and held that the complaint should be dismissed. To afford the plaintiffs the relief prayed in their proposed amended complaint would be to completely excuse their failure to maintain continuous union membership in a qualified union. Although the equities strongly favor excusing them, as they certainly intended to abide by the union shop agreement and their only default was an understandable inability to predict a Supreme Court decision, we are powerless to grant them the desired relief if we are to be obedient to the Rychlik doctrine.
 
 
 11
 These men would seem to be entitled under the statute only to reemployment as new men, with such seniority rights as are due new employees having their skills and experience, under the Railroad's employment practices and the collective bargaining agreement. The defendant, in its answer to the plaintiffs' motion for leave to amend, agreed that the plaintiffs had the right to be hired as new employees. Thus, the only relief, consistent with Rychlik, that could be given under the proposed amended complaint is not contested by the defendant union.[7]
 
 
 12
 It is unfortunate that these appellants, who always belonged to a union, and who in good faith intended to comply with the union shop agreements, should be restricted to reemployment as new men, with the loss of seniority rights earned by faithful service to the Railroad for many years, only because the union to which they belonged for a short period was subsequently held not qualified under the statute. If Rychlik did not stand in the way, we should be disposed under these circumstances to order the Union to permit reinstatement with seniority. However, these same equities were present and acknowledged by the Supreme Court in the Rychlik case, but it was there held that no federal cause of action existed.
 
 
 13
 For the above reasons, the decision of the District Court must be
 
 
 14
 Affirmed.
 
 
 15
 ALBERT V. BRYAN, District Judge (concurring in part and dissenting in part).
 
 
 16
 The livelihood of the appellant trainmen is, by the opinion of the Court, left subject in a serious degree to the pique of the appellee union. The union shop agreement and the 1951 amendment of the Railway Labor Act are allowed to be the instruments of the subjugation. Solely because the appellants left the union and joined another, the formed as their collective bargaining representative has, in retaliation, stripped them of their seniority earned over many years with the Baltimore & Ohio Railroad. This is the gravest of the grievances pleaded by the trainmen. The Court gives them no relief. To this I cannot assent.
 
 
 17
 I dissent, too, from the affirmance of the denial of a trial to the trainmen in their attack on the validity of the union shop agreement, based on the alleged use of union dues for political purposes. But I concur with the Court in holding that the trainmen made no case for damages for discrimination, initially, in their expulsion from the union and in their original citation to the Railroad as no longer maintaining union membership within the meaning of the agreement. Clarity and the chronology of the pleadings require these three aspects of the suit to be discussed in inverse order to this enumeration of them.
 
 
 18
 I. The District Court found in the record an unusual haste and promptness by the Brotherhood of Railroad Trainmen in expelling and citing the appeallants, but it was of the opinion that this differentiation did not amount to actionable discrimination. I hold this view, too, because the plaintiffs purposefully left BRT and intended to end their membership. The union merely took them at their word, which was hardly a discrimination. For the same reason the Brotherhood was warranted in swiftly citing them to the Railroad and questioning their eligibility for continued employment.
 
 
 19
 II. The cause of action pitched on the statutory and Constitutional invalidity of the union shop agreement was thought by the District Judge to be beyond his jurisdiction. He noticed the want of diversity of citizenship between the parties; he also concluded it was not a controversy arising under the laws of the United States. But, even if these holdings are sound, there is another basis for jurisdiction. It is that the asserted claim is so intimately related to the other issues, concededly within the competence of the Court, that it should be adjudicated in this cause despite any deficiency in explicit Federal jurisdictional attributes.
 
 
 20
 The union shop agreement was the very foundation and justification of the citation by BRT. Consequently, the trainmen's claim assailing that contract was a related and inseparable controversy. Siler v. Louisville & Nashville R.R. Co., 1900, 213 U.S. 175, 191, 29 S.Ct. 451, 53 L.Ed. 753; Hurn v. Oursler, 1933, 289 U.S. 238, 242 ff., 53 S.Ct. 586, 77 L.Ed. 1148; Strachman v. Palmer, 1 Cir., 1949, 177 F.2d 427, 12 A.L.R.2d 687, with note at page 695.
 
 
 21
 On the worth of the claim, the trial court scrupulously recounted the assertions of the trainmen that BRT from 1928 to 1937 was, and again since January 1, 1956 has continuously been, affiliated with the Railway Labor Executives Association; and that during 1956 and 1957 some of the general funds, including dues received, of BRT were funneled through the Association to the Railway Labor Political League for application to political purposes. The District Judge noted that no dues, therefore, were so applied in the years 1951-1955, when the union was not associated with RLEA or RLPL. As the expulsion of the plaintiffs occurred in the last period for a default of dues in 1952 and 1953, he felt that the invalidation of the agreement for a misuse of dues occurring subsequent to the expulsion of the plaintiffs would be of no pertinency in this case.
 
 
 22
 In this I think he erred. The agreement was the constant weapon of the union, throughout, in pressing for the discharge of the plaintiffs, and indeed as late as the spring and early summer of 1957. Not until then were they ousted from their employment. Thus BRT was invoking the agreement against the trainmen both in 1956 and in 1957. If the agreement was avoided, as in contravention of the trainmen's Constitutional rights or of the Corrupt Practices Act, by the union's expenditures in 1956 and 1957, and the union used the agreement in that period to the plaintiff's hurt, the appellants should be able to recover compensation for the resulting injuries.
 
 
 23
 I think the plaintiffs were, at least, entitled to a plenary trial on this claim. The District Court has not held that the agreement was or was not vitiated. Finally, that the plaintiffs may have, as the majority opinion intimates, some other remedy than damages on this ground of action is not, in my opinion, an acceptable reason for dismissing the claim.
 
 
 24
 III. I would allow the proposed amendment which seeks to preserve the trainmen's seniority and return them to the Railroad. Obviously, seniority is the marrow of the union's refusal to consent to the Railroad's restoration of the men in its employment.
 
 
 25
 The appellants in brief and at the bar asserted that BRT had arbitrarily and vindictively barred their reinstatement to its membership with seniority. It was thus employing the union agreement, they charged, to squeeze them out of their jobs, inasmuch as only one or two unions other than BRT were available to their craft. The argument quite readily showed that their entitlement to BRT membership without loss of seniority was the issue underlying the prayer of the proposed amendment: that the union be compelled to consent to their reemployment by the Railroad without prejudice.
 
 
 26
 If, as the opinion of the Court suggests, the trainmen now have the necessary union membership, though in another union, and BRT agrees they may return to B& O's employment as new men, their cause is simplified. The point is that BRT is still using the trainmen's relinquishment of BRT membership, and their entry into UROC, to deprive them of seniority. I think the Act should not be subject ot the whim of the union; I think the Act assures them the right of membership in BRT and their former employment undiminished. Otherwise, the statute is utilized to further a selfish aim of the union. Cf. Railway Employes' Dept. v. Hanson, 1956, 351 U.S. 225, 238, 76 S.Ct. 714, 100 L.Ed. 1112.
 
 
 27
 In declining to consent to B&O's acceptance of the plaintiffs with seniority the union violates its obligations as the collective bargaining representative of the trainmen. Its opposition has no base save a determination to punish them for leaving BRT. That the men left in the bona fide belief that they could lawfully change unions is not questioned. That they proved to be mistaken in their understanding of the law-- a mistake shared for years by the lower Federal courts-- should not bring down upon them crushing penalties-- the irretrievable impairment of their livelihood. Notwithstanding, the union has seized upon the error as warrant to use its powers under the union shop agreement and the Railway Labor Act to oppress the trainmen in this very way.
 
 
 28
 The plaintiffs were never defiant of unionism, the union shop or maintenance of continuous membership. They were never 'free riders'. They have always been quite willing to pay all back dues. They did prefer another union, and so in good faith they joined the Union of Railroad operating Crafts. But this was in no wise reprehensible behavior. Indeed, the rpoviso of the 1951 amendment to the Act explicitly stipulates 'that nothing herein or in any such agreement or agreements shall prevent an employee from changing membership from one organization to another organization admitting to membership employees of a craft or class in any of said services.' This provision, of course, contemplates that the change should cause no disturbance of seniority. UROC was not an outlaw or 'splinter' union. The reason it did not qualify under the Act was not that it was not 'national in scope, organized in accordance with this Act'; the reason was only that UROC had not qualified as an elector of the union representatives on the National Railroad Adjustment Board. Pennsylvania R.R. Co. v. Rychlik, 1957, 352 U.S. 480, 485, 77 S.Ct. 421, 1 L.Ed.2d 480. Yet the statutory right to change unions is by the Brotherhood subordinated to its own policy.
 
 
 29
 The bitterly vengeful attitude of the Brotherhood is manifested by its conduct towards the trainmen. On September 3, 1953, within three months after the last withdrawals by the plaintiffs from BRT, the General Chairman of its Grievance Committee rejected an application for reinstatement to the union of a former member because the applicant had joined UROC. This rejection was publicized to all of the plaintiffs as notice of the union's intentions towards them. Not only did the Chairman declare that B&O trainmen having membership solely in UROC were not maintaining requisite union membership, and were not entitled to employment by B&O, but he denounced their separation from BRT as desertion and going 'over the hill'. He stated that he was 'not too much concerned about what' the applicant had to say and depicted him as a supplicant 'on bended knees asking for forgiveness'.
 
 
 30
 The plaintiffs had not abused the privilege of transfer from one union to another through undue repetitions. They have done nothing to forfeit their right to rejoin the Railroad unpenalized, if that right is measured upon their good faith, the statute and the agreement, rather than upon the preference of the union. The 1951 amendment discloses a constant solicitude for the employees against an arbitrary exercise by the union of the power vested in it by the amendment as instrumented by the shop agreement. A strict, constant and delicate sensibility of the bargaining representative to its trust has repeatedly been enjoined upon the union by the Supreme Court. Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. That the factual basis of these cases was race or color does not in the slightest dilute the unequivocal command of fairness they give the bargaining agent.
 
 
 31
 Equity will relieve the plaintiffs from the injustice and intransigence of the union. It will in the circumstances forbid the union to pursue its objection to the Railroad's unqualified reemployment of the plaintiffs and will award appropriate damages for the union's persistence. In this the court is but enforcing the privileges of the employee under the statute and insisting that the union respect its trust. A bona fide mistake will not be allowed to stand to the prejudice of an honest suitor. A sharper hurt is scarcely imaginable than the destruction, for no wrongdoing whatsoever, of the benefits of a long career of honorable service. Clifton Mfg. Co. v. United States, 4 Cir., 1935, 76 F.2d 577, 579-581, certiorari denied 296 U.S. 622, 56 S.Ct. 143, 80 L.Ed. 442; Winget v. Bockwood, 8 Cir., 1934, 69 F.2d 326, 332.
 
 
 32
 Of this dispute the District Court plainly had jurisdiction. It was a fight between employees and union. Again, the union was sued in its detached capacity as their bargaining representative by trainmen not of its body. The Railroad had no place in the action, for it had no quarrel with either party. Conley v. Gibson, 1957, 355 U.S; 41, 78 S.Ct. 99, supra. For these reasons the controversy was not within the province of the National Railroad Adjustment Board.
 
 
 33
 Nor can I agree with the trial court that those of the appellants known as the Decker suit plaintiffs are precluded in this suit by the National Railroad Adjustment Board's decision on the submission by B&O to NRAB of their discharge. The Board had no power to adjudicate as between those plaintiffs and their bargaining agent. Likewise, Sampsell v. Baltimore & O.R. Co., 4 Cir., 235 F.2d 569, is mistakenly cited as a sustaining precedent, for it merely held the court to be without original jurisdiction when the contest, as there, was between the railroad and its employees.
 
 
 34
 The proposed amendment to the complaint was procedurally acceptable; it was in keeping with the original object of the suit; The 'presentation of the merits of the action will be subserved thereby'. F.R.Civ.P. rule 15(b), 28 U.S.C.A. The amendment was simply an expansion of the complaint's first cause of action, and for that reason was not subject to the condemnation of laches. Again, the calim outlined in the amendment is not premised on discrimination in reinstatement into the union-- a point expressly waived by the plaintiffs-- but on denial of reinstatement with the Railroad with seniority.
 
 
 35
 Or course, the good faith of the plaintiffs was not significant in their citation initially for discharge by the Railroad, for between the Railroad and its employees the bald status of their unionship was conclusive. Pennsylvania R.R. Co. v. Rychlik, 352 U.S. 480, 77 S.Ct. 421, supra; Latham v. Baltimore & O.R. Co., 2 Cir., 1960, 274 F.2d 507. But neither of these cases goes beyond that point; they do not consider the issue of restoration with seniority. In Rychlik the Court held UROC an ineligible union, and held nothing more, for nothing else was required for decision. In Latham, no claim was asserted against the union and reemployment and seniority were not in the case. Pages 509, 510.
 
 
 36
 The trial on the proposed amendment would not, I think, as the District Court feared, entail complications in the matter of seniority with the other trainmen. As a party to the case a decree for or against the union would bind the other trainmen.
 
 
 37
 In my opinion the judgment of the District Court should be reversed insofar as it denies the appellants a trial on the claim relating to the validity of the union shop agreement and on the case made by the proposed amendment, but in all other parts it ought to be affirmed.
 
 
 
 [1]
 45 U.S.C.A. 152, Eleventh (a) and (c)
 2 U.S.C.A. 153, First.
 
 
 [3]
 See 183 F.Supp. at page 287
 
 
 [4]
 In that court the plaintiffs submitted names of men whom BRT allegedly treated more leniently than the plaintiffs. However, BRT, in affidavits uncontested by the plaintiffs, disclosed persuasive explanations negating discrimination in these cases. This material may be briefly summarized. With respect to those whom BRT reinstated after they stopped paying dues, most of them were reinstated by locals of the Brotherhood in other states which observed a milder policy than the Maryland locals. In the remaining instances, some sought reinstatement prior to the initial hearings before the B. & O. officer, and according to BRT, if the plaintiffs had asked for reinstatement and tendered their back dues at any time before their initial hearings, they also would have been granted reinstatement. None of the plaintiffs sought reinstatement until after their initial hearings. In the case of others, there were special circumstances justifying the union in making exceptions and restoring them without loss of seniority rights. In the cases of those as to whom it was alleged that they failed to pay dues but were not cited at all, it was shown that they actually were cited, or they had resigned from their employment, or they in fact had not defaulted in dues payments, or there were unusual circumstances warranting special consideration
 The only other evidence submitted to the District Court to support the allegations of discriminatory treatment consisted of the testimony of several of the plaintiffs. Superficially, this testimony might seem to bolster the charge of discrimination in reinstatement, for the plaintiffs testified that the door was closed against their rejoining BRT whereas it was open to others less active than they in UROC. When questioned, however, the plaintiffs were unable to present any evidence tending to show that the Brotherhood failed to apply uniformly the stated policy to allow defaulters to renew their membership up to the time of their initial hearings. As previously mentioned, these appellants did not seek to rejoin the Brotherhood until their appeal hearings.
 
 
 [5]
 This question is now before the Supreme Court. International Association of Machinists v. Street, probable jurisdiction noted, 361 U.S. 807, 80 S.Ct. 84, 4 L.Ed.2d 54, and recently argued
 
 
 [6]
 18 U.S.C.A. 610
 
 
 [7]
 In fact, apparently the appellants have joined other qualified unions and become entitled as of the date of such membership to seek employment from the Railroad. Reinstatement in BRT would not enlarge plaintiffs' rights over their rights as members of other qualified unions